AMERICAN YOUTH FOUNDATION v.
TOWNSHIP OF BENONA.

1. JUDGMENT—MOTION FOR SUMMARY JUDGMENT—PLEADING.
Allegations in a complaint must be accepted as true when deter-
mining whether or not to grant a motion for summary judg-
ment.

2. CONSTITUTIONAL LAW—CONSTRUCTION.
Interpretation of a constitutional provision requires first, resort
to the natural signification of the words employed in the order
and grammatical arrangement in which the framers of the in-
strument have placed them, and, if thus regarded, the words used
convey a definite meaning, which involves no absurdity and
no contradiction between different parts of the same writing,
then the meaning apparent on the face of the instrument is
the one which alone may be used.

3. SAME—INTERPRETATION—MEANING OF WORDS.
Presumption is that words in a Constitution have been used
according to their plain, natural import and the court is not
at liberty to disregard the plain meaning of the words in
order to search for some other conjectured intent.

4. SAME—INTERPRETATION—EXISTING LAWS.
Framers of the Constitution are presumed to have knowledge of
existing laws and to act in reference to that knowledge.

REFERENCES FOR POINTS IN HEADNOTES
[1] 41 Am Jur, Pleading §§ 340–343.
[2, 3] 16 Am Jur 2d, Constitutional Law §§ 75, 76.
[4] 16 Am Jur 2d, Constitutional Law §§ 87–89.
[5] 16 Am Jur 2d, Constitutional Law § 87; 51 Am Jur, Taxation
§ 500.
[6] 16 Am Jur 2d, Constitutional Law §§ 58, 60.
[7] 51 Am Jur, Taxation §§ 524, 527.
[8] 16 Am Jur 2d, Constitutional Law §§ 101, 137.
[9–11] 51 Am Jur, Taxation §§ 500, 503, 520–522.
[12] 5 Am Jur 2d, Appeal and Error § 1009.

5. SAME—TAXATION—NONPROFIT ORGANIZATION—STATUTES—EXEMP-
TION.

Framers of the Constitution *held*, to have intended to confirm
the existing statutory law by adopting section of Constitution
providing for exemption of nonprofit religious or educational
organizations, as defined by law, from real and personal
property taxes (Const 1963, art 9, § 4; CL 1948, § 211.7, as
amended by PA 1963, No 148).

6. SAME—CONSTRUCTION OF CONSTITUTION—PRINCIPLES.

Usual principles governing the construction of statutes apply
also to the construction of Constitutions, as a general rule.

7. TAXATION—EXEMPTION PROVISIONS—CONSTRUCTION.

Exemption provisions of a tax statute must be strictly construed
in favor of the taxing agency, and the burden is on claimant to
establish clearly his right to exemption (CL 1948, § 211.7,
as amended by PA 1963, No 148).

8. CONSTITUTIONAL LAW—STATUTES.

The court will not declare a statute unconstitutional unless it
is plain that it violates some provision of the Constitution,
and constitutionality will be supported by all possible pre-
sumptions not clearly inconsistent with the language and
subject matter.

9. SAME—TAXATION—NONPROFIT ORGANIZATION—EXEMPTION—MICH-
IGAN CORPORATIONS.

Restriction of statutory tax exemption for nonprofit corporations
to Michigan corporations *held*, not inconsistent with consti-
tutional provision for tax exemption of nonprofit corporations
(Const 1963, art 9, § 4; CL 1948, § 211.7, as amended by
PA 1963, No 148).

10. SAME—NONPROFIT EXEMPTION—ARBITRARY DISCRIMINATION.

Statute providing for tax exemption of nonprofit corporations,
if they are incorporated in Michigan *held*, not to be arbitrary
discrimination, and hence not to violate the equal protection
clause in the Constitution of the United States (US Const, Am
14; CL 1948, § 211.7, as amended by PA 1963, No 148).

11. TAXATION—NONPROFIT MISSOURI CORPORATION—EXEMPTION.

Nonprofit religious and educational Missouri corporation owning
and occupying property for religious and educational uses in
Michigan *held*, not to be entitled to tax exemption provided
for similar Michigan corporations (CL 1948, § 211.7, as
amended by PA 1963, No 148).

12. Costs—Public Question—Tax Exemption—Nonprofit Missouri Corporation.

> No costs are allowed in action by nonprofit Missouri corporation organized for educational and religious purposes to recover property taxes paid under protest, because of claimed exemption, a public question being involved (CL 1948, § 211.7, as amended by PA 1963, No 148).

Appeal from Oceana; Van Domelen (Harold), J. Submitted Division 3 May 8, 1967, at Grand Rapids. (Docket No. 2,587.)   Decided November 30, 1967.

Complaint by the American Youth Foundation, a Missouri corporation, against Benona Township and Oceana County for a determination that real property used by it for a youth camp is exempt from taxation, to restrain further collection of taxes, and to obtain a refund of taxes paid under protest. Summary judgment for defendants. Plaintiff appeals. Affirmed.

*Hinds, Sikkenga & Prince* and *Earl C. Pugsley* (*Fred Roland Allaben,* of counsel), for plaintiff.

*Walter A. Urick,* Prosecuting Attorney, and *Rhoades, McKee & Boer,* for defendant.

Fitzgerald, P. J.   The most succinct statement of the facts in regard to this appeal is found in appellant's brief.   We herewith reproduce that statement, condensed for clarity:

"This is an action to obtain a judicial determination that plaintiff, a Missouri corporation, duly authorized to operate in Michigan, is a nonprofit religious and educational organization, owning and occupying property in the defendant township of Benona, Oceana county, Michigan, which it uses exclusively for religious and educational purposes.

Consequently, the plaintiff says it is entitled to a tax exemption on its property so owned, used and occupied, as a matter of law.

"The plaintiff filed a claim in due season with the tax assessing officers of Benona township for a tax exemption on its aforesaid property in 1965 and was refused, whereupon it commenced this action, seeking the judicial determination above mentioned, and a restraining order to enjoin the levying and collecting of taxes assessed upon its property for the year 1965, or to be assessed in future years.

"Subsequent to the filing of this complaint, the plaintiff paid the 1965 assessment made upon its property, under protest, and promptly thereafter filed an additional complaint asking for a refund of the taxes so paid.

"The defendants moved for a summary judgment on the grounds that the plaintiff is not incorporated in Michigan. This is an appeal from the order of the Oceana county circuit court granting such judgment.

"This brings us at once to the pertinent allegations in the complaint. In the first three paragraphs the plaintiff alleges ownership, possession, and exclusive use of its land in the defendant township of Benona, Oceana county, Michigan, known as 'Camp Miniwanca', for 'religious and educational purposes.'

"The charter of this organization sets forth its purpose in the following language:

"ARTICLE I

" 'The purpose of this Foundation shall be (a) the discovery and training of young people for Christian leadership; (b) scientific research and experimentation in the field of adolescence; (c) the creation of special literature in the field of Christian training; (d) the assistance of youth through personal contacts and student aids; (e) educational and religious service to individuals and organizations;

(f) the organization, maintenance, and administration of training camps and schools for the development of Christian character, citizenship, and leadership for all of life's vocations; (g) the stimulation and promotion of a program of balanced fourfold physical, mental, social, and religious development among the youth of America and of the world. (Exhibit B annexed to plaintiff's complaint.)'

"The following is the study curriculum used at Camp Miniwanca, as alleged in the bill:

The Life and Teachings of Jesus
The Bible and the Christian Faith
Christian Ethics
High Moments of the Christian Story
Christian Women in American Life
Finding God in Nature
Role of Christianity for the Present and Future
World Religions
Developing Religious Maturity
Leadership in Church Youth Program
Christian Leadership Around the World
Christian View of Sex, Love and Marriage
Literature and Christian Faith
Christian Values in Modern Drama
Professional Christian Leadership
Life Planning
Understanding Leadership
America—Its Tradition and Ideals
America—In the World Community
College Adjustment and Campus Leadership
Comparative Ideologies
Other Lands and People
Psychology of Maturity
Public Speaking
Leadership in Rural Communities
Socio-Economic Patterns and Problems
The World in Upheaval and Renewal
Scientific Thinking

"The bill further outlines the organizational structure of the plaintiff utilized in its operation of

Camp Miniwanca, upon the property on which the tax exemption is claimed.

"This organization is governed by a board of 12 trustees, carefully chosen from several States and numerous vocations. From this number is selected a president, vice-president, secretary, and treasurer. These trustees and officers serve without financial rewards, with much interest and sacrifice of time and money. To further implement the functions and detail operations of the camp, an executive staff is employed, including a director, 4 associate directors and a business manager, all of whom are full time, year around employees.

"In addition to these year around executive officers, each season upwards of 40 instructors are engaged, during the summer season. These include carefully selected individuals, consisting of college deans and professors, clergymen, schoolteachers and other qualified individuals who administer the curriculum hereinbefore outlined.

"The bill further alleges that the American Youth Foundation is 'a unique youth-serving organization which holds as its purpose the Christian leadership training of its young people.' The organization is 'nondenominational' as well as interdenominational and exercises no preference or favoritisms among or between Christian churches.

"The success and popularity of Camp Miniwanca is attested by the fact that in recent years its facilities have been taxed to capacity, with an attendance of upwards of 2,000, including boys and girls from all 50 States and several foreign countries, many of whom are the sons and daughters of former 'Miniwanca' attendants.

"The property on which the tax exemption is requested admittedly is used exclusively for religious purposes, implemented by appropriate educational instructions."

On appeal, plaintiffs ask the following two questions:

1. Is the plaintiff entitled to exemption from real and personal property taxation under Const 1963, art 9, § 4; and

2. Is the claimed exemption defeated by the provisions of CL 1948, § 211.7, as amended by PA 1963, No 148 (Stat Ann 1965 Cum Supp § 7.7)?

Both sides have filed extensive briefs and memoranda of law, seeking to support their position. An exhaustive examination of their authorities reveals no more definitive material than that available to the trial court. A similar extensive review of the opinion of Honorable Harold Van Domelen, circuit judge for the county of Oceana, issued on June 27, 1966, convinces this Court that the said opinion needs no buttressing or expansion and that it adequately and accurately decides the case at hand. Accordingly, we incorporate it herein and adopt it as the opinion of this Court:

"The complaint filed herein alleges that plaintiff is a Missouri corporation owning property in Benona township, Oceana county, Michigan, which is assessed for real and personal taxes. In February, 1965, the plaintiff filed a claim with the Benona township assessing officer for exemption from taxation on the basis that the said property is owned and occupied by a nonprofit corporation and that said property is used exclusively for religious and educational purposes pursuant to Const 1963, art 9, § 4. In March, 1965, the same claim for exemption was filed with the Benona township board of review which denied the claim and plaintiff filed this complaint requesting this court to restrain the defendants from assessing or collecting real and personal taxes against said property.

"The defendants have now filed a motion for summary judgment based upon the contention that pursuant to CL 1948, § 211.7, as amended by PA 1963, No 148 (Stat Ann 1965 Cum Supp § 7.7[4]) only

those religious and educational institutions which are incorporated under the laws of Michigan are entitled to tax exemption on their real and personal property. The plaintiffs contend that defendants' position is not valid because CL 1948, § 211.7, as amended by PA 1963, No 148 (Stat Ann 1965 Cum Supp § 7.7) has been altered and superseded by Const 1963, art 9, § 4. These contentions of the parties raise the basic question to be answered: does Const 1963, art 9, § 4, create a tax exemption for the plaintiff?

"For the purposes of this motion for summary judgment the allegations of the plaintiff in the complaint must be accepted as true. Therefore, for the determination of this motion the plaintiff is considered to be a nonprofit, religious and educational, Missouri corporation using its said Benona township land exclusively for religious or educational purposes.

"After careful consideration of the briefs submitted and extensive examination of the law on this subject it appears that the main problem is to determine the intent of the framers of the Constitution and of the people adopting it. The question whether article 9, § 4, is or is not self-executing becomes ultimately one of intention. *Burdick* v. *Secretary of State* (1964), 373 Mich 578; 16 Am Jur 2d, Constitutional Law, § 58, p 230; § 64, p 239; and § 97, p 283; 16 CJS, Constitutional Law, § 16, p 72.

"In arriving at the intent of the framers of the Constitution and of the people adopting it, certain rules have been stressed by the Court. *People* v. *Board of State Canvassers* (1949), 323 Mich 523 at p 529, [quoting from *Attorney General* v. *State Board of Assessors,* 143 Mich 73, 76]: 'The first resort, in all cases where a constitutional provision is to be interpreted, is to the natural signification of the words employed in the order and grammatical arrangement in which the framers of the instrument have placed them; and, if thus regarded, the words used convey a definite meaning, which

involves no absurdity and no contradiction between different parts of the same writing, then the meaning apparent on the face of the instrument is the one which alone we are at liberty to say was intended to be conveyed. In such cases there is no room for construction. Cooley on Constitutional Limitations (5th ed), pp 69, 70.' Rules of interpretation further stress that it is presumed that words in a Constitution have been used according to their plain, natural import and that the court is not at liberty to disregard the plain meaning of the words of a Constitution in order to search for some other conjectured intent. 16 Am Jur 2d, Constitutional Law, § 75, p 256.

"Const 1963, art 9, § 4, reads as follows: 'Property owned and occupied by nonprofit religious or educational organizations and used exclusively for religious or educational purposes, *as defined by law,* shall be exempt from real and personal property taxes.' The key phrase in said section 4 is 'as defined by law'. What is the plain natural import of that phrase? It is the opinion of this court that the phrase makes reference to existing common and statutory law and such future definitive law as is necessary to make practical and reasonable the application of the broad limitation of section 4 to existing conditions.

"The framers of the Constitution are presumed to have knowledge of existing laws and to act in reference to that knowledge. *Hall* v. *Ira Township* (1957), 348 Mich 402. The courts on numerous occasions have gone to the Constitutional convention debates and addresses to the people to decide the meaning of the Constitution. *Burdick* v. *Secretary of State, supra;* 16 Am Jur 2d, Constitutional Law, § 88, p 274. By reference to the convention comment to article 9, § 4, which was published by the convention in its official report to the people of the State, it patently appears that the delegates were well aware of the statutory law on this subject as the report states, 'These exemptions already exist

by statute.' Reference to the debates set forth in the official record of the convention further establishes the intention of the convention to confirm the existing statutory law. Members of the committee on taxation expressed an uncontroverted opinion that said section 4 'leaves it in the hands of the legislature to define what these particular institutions are and also, to define property and all of the other items which precede the words, "as defined by law". This is the intent of the provision.' Further committee comment was, 'It has never been the intent of the sponsors of section 4 *to take away any of the existing powers of the legislature or to change any of the existing statutes* but, more important to retain in the hands of the legislature the power to change definitions and the power to change the legislation so that if there are abuses, they may be corrected. * * * So I submit that we are not changing anything.' See 2 Constitutional Convention 1961, Record, pp 3167–3170. The above-quoted language of the debates leaves no doubt as to the intention of the members of the convention that the language of section 4 should validate the existing statutory law as set out in CL 1948, § 211.7, as amended by PA 1963, No 148 (Stat Ann 1965 Cum Supp § 7.7).

"As a general rule the usual principles governing the construction of statutes apply also to the construction of constitutions. *Board of Education of the City of Detroit* v. *Superintendent of Public Instruction* (1947), 319 Mich 436; 16 CJS, Constitutional Law, § 15, p 71; 16 Am Jur 2d, Constitutional Law, § 59, p 231.

"In *Evanston Y. M. C. A. Camp* v. *State Tax Commission* (1962), 369 Mich 1, the Court declared that exemption provisions of the tax statute must be strictly construed in favor of the taxing agency and quoted Cooley on Taxation as follows:

" 'Exemptions are never presumed, the burden is on a claimant to establish clearly his right to

exemption, and an alleged grant of exemption will
be strictly construed and cannot be made out by
inference or implication but must be beyond rea-
sonable doubt.   In other words, since taxation is
the rule, and exemption the exception, the intention
to make an exemption ought to be expressed in clear
and unambiguous terms; it cannot be taken to have
been intended when the language of the statute on
which it depends is doubtful or uncertain; and the
burden of establishing it is upon him who claims it.
Moreover, if an exemption is found to exist, it
must not be enlarged by construction, since the
reasonable presumption is that the State has grant-
ed in express terms all it intended to grant at all,
and that unless the privilege is limited to the very
terms of the statute the favor would be extended be-
yond what was meant.' *   Application of this prin-
ciple to interpretation of section 4 would require
that this court refrain from any inferences or im-
plications in favor of tax exemption for the plaintiff
and strictly limit the exemption to Michigan cor-
porations 'as defined by law' pursuant to CL 1948,
§ 211.7, as amended by PA 1963, No 148 (Stat Ann
1965 Cum Supp § 7.7).

"The State legislature is the repository of all
legislative power subject only to limitations and
restrictions imposed by the Constitution.   The court
will not declare a statute unconstitutional unless it
is plain that it violates some provision of the Consti-
tution.   The constitutionality of a statute will be
supported by all possible presumptions not clearly
inconsistent with the language and subject matter.
*Oakland County Taxpayers' League* v. *Oakland
County Supervisors* (1959), 355 Mich 305.

"The plaintiff is asking this court to declare that
Const 1963, art 9, § 4, supersedes and makes void CL
1948, § 211.7, as amended by PA 1963, No 148 (Stat
Ann 1965 Cum Supp § 7.7[4]), or in other words,
to declare said statute unconstitutional.

---

* 2 Cooley on Taxation (4th ed), § 672, pp 1404–1408.—Reporter.

"The above statement of the Court in *Oakland County Taxpayers' League v. Oakland County Supervisors* requires this court to weigh all presumptions in favor of the constitutionality of CL 1948, § 211.7, as amended by PA 1963, No 148 (Stat Ann 1965 Cum Supp § 7.7), and to attempt to reconcile any inconsistencies in favor of its validity. It is the opinion of this court that the language of art 9, § 4, is so clear and unambiguous that no presumptions are necessary to find that said section 4 was passed by the convention with CL 1948, § 211.7, as amended by PA 1963, No 148 (Stat Ann 1965 Cum Supp § 7.7) in mind and that said CL 1948, § 211.7 as amended by PA 1963, No 148 (Stat Ann 1965 Cum Supp § 7.7) is not inconsistent with section 4, and, therefore, is a valid statute.

"The plaintiff further contends that limitation of tax exemption to companies incorporated under the laws of Michigan under CL 1948, § 211.7, as amended by PA 1963, No 148 (Stat Ann 1965 Cum Supp § 7.7) is arbitrary discrimination and offends the equal protection clause of the 14th Amendment of the Federal Constitution.

"This question of classification of property for tax exemptions was dealt with in *Evanston Y. M. C. A. Camp v. State Tax Commission.* In that case the Court said that the legislature has the power to prescribe the subjects of tax exemption. It is the opinion of this court that said statute does not violate the 14th Amendment of the Constitution of the United States.

"The language of article 9, § 4, is clear and unambiguous; the framers of the Constitution knew of the existence of statutory law set out in CL 1948, § 211.7 as amended by PA 1963, No 148 (Stat Ann 1965 Cum Supp § 7.7); the debates expressed the desire of the convention to retain the existing limitations on exemptions; the Official Report of the Convention to the people of Michigan reflects the desire of the convention to adopt existing law; the provisions of article 9, § 4, and CL 1948, § 211.7 as

amended by PA 1963, No 148 (Stat Ann 1965 Cum Supp § 7.7) are not inconsistent; and all presumptions must favor constitutionality of said statute. Based upon these conclusions this court finds that the plaintiff has failed to state a cause of action upon which relief can be granted in that plaintiff is not incorporated under the laws of this State as required by CL 1948, § 211.7, as amended by PA 1963, No 148 (Stat Ann 1965 Cum Supp § 717[4]), and, as a result, is not entitled to tax exemption.

"Therefore, defendant's motion for summary judgment is hereby granted."

Our review and deliberations lead us to the same conclusion as the trial court.

Affirmed. No costs, a public question being involved.

BURNS and HOLBROOK, JJ., concurred.