ST PAUL LUTHERAN CHURCH v CITY OF RIVERVIEW

Docket No. 93409. Submitted March 16, 1987, at Detroit. Decided December 9, 1987. Leave to appeal applied for.

St. Paul Lutheran Church bought a parcel of land in the City of Riverview upon which it intended to build a house of worship. In 1985, while the land was still vacant, the City of Riverview placed the property on the tax rolls with an assessed value of $186,300. The church protested the 1985 assessment, contesting both the amount of the assessment and the city's refusal to exempt the property from taxation. The city reduced the assessed valuation to $128,920, but denied the church's request for an exemption. The church sought review by the Tax Tribunal, again contesting both the amount of the assessment and the failure to grant exempt status to the property. The County of Wayne was permitted to intervene. The city and the church each filed a motion for summary disposition. The Tax Tribunal, upon the filing by the church of proof of its intent to build a house of worship upon the property, granted the church's motion for summary disposition on the basis that the property was exempt from taxation. The city and county appealed.

The Court of Appeals *held:*

The statutory provision providing exemptions from ad valorem taxation to houses of worship provides for an exemption where the house of worship is being used for religious services or the teaching of religious truths. The statute clearly limits the exemption to property upon which there exists a house of worship which is presently in use. The mere intent to use property for that purpose in the future does not exempt the property from taxation.

Reversed and remanded for consideration of the question of whether the amount of the assessment is too high.

TAXATION — REAL PROPERTY — EXEMPTIONS FROM TAXATION — RELIGIOUS SOCIETIES — HOUSES OF WORSHIP.

Real property owned by a religious society is exempt from ad

REFERENCES

Am Jur 2d, State and Local Taxation §§ 369-372.

What constitutes church, religious society, or institution exempt from property tax under state constitutional or statutory provisions. 28 ALR4th 344.

valorem taxation only to the extent that the property is owned and occupied as a parsonage or owned and used as a house of public worship; both the constitutional and statutory exemption provisions require actual use of the property for its religious purpose; accordingly, property owned by a religious society with the intent that a house of worship will be built upon the land is not exempt from taxation until such time as the house of worship is actually built and used for religious services or the teaching of religious truths and beliefs (Const 1963, art 9, § 4; MCL 211.7[s]; MSA 7.7[4p]).

*Butzel, Long, Gust, Klein & Van Zile* (by *Carl Rashid, Jr.*), for petitioner.

*Logan, Huchla, Wycoff & Pentiuk* (by *Randall A. Pentiuk*), for the City of Riverview.

*John D. O'Hair,* Corporation Counsel, and *Robert G. Schurch* and *Richard G. Stanley,* Assistant Corporation Counsel, for Wayne County.

Before: SHEPHERD, P.J., and J. H. GILLIS and S. J. LATREILLE,* JJ.

PER CURIAM. This is a tax case involving the City of Riverview's tax assessment of a parcel of property on which plaintiff St. Paul Lutheran Church intended to construct a house of public worship. The church claimed that the property was exempt from taxation or, alternatively, that the city's tax assessment was too high. The Michigan Tax Tribunal agreed with the church and ruled that the property was tax exempt. The city and the County of Wayne, which was allowed to intervene because its tax assessment hinged on the tax status of the church's land, appeal as of right.

The sole issue on appeal is whether the church's undeveloped realty in the City of Riverview was exempt from taxation under § 7(s) of the General

_____
* Circuit judge, sitting on the Court of Appeals by assignment.

Property Tax Act, MCL 211.7(s); MSA 7.7(4p), because the church intended to build a house of public worship on the property. We conclude that the church is entitled to an exemption for the property only after the house of public worship is actually constructed and used for religious services or instruction. We reverse the ruling of the Tax Tribunal.

The facts are not disputed and can be briefly recounted. The church purchased the property in dispute in November, 1984. In compiling the 1985 assessment roll, the city determined that the property's true cash value was $372,060 and that the assessed value, fifty percent of the true cash value, was $186,030. The church protested the 1985 assessment to the city's board of review, contesting both the amount of the assessment and the city's refusal to exempt the property from taxation. The board reduced the assessed value to $128,920, but denied the church's request for an exemption.

The church appealed to the Tax Tribunal, and both the city and the church moved for summary disposition under MCR 2.116(C)(8) and (10). The Tax Tribunal granted the County of Wayne's motion to intervene. Thereafter, on March 20, 1986, the Tax Tribunal entered an order denying the city's motion for summary disposition and ordering that the church's motion be held in abeyance to allow the church to file an affidavit or other proofs in support of its claim that it was progressing with plans for construction of a church on the property. From its review of MCL 211.7(s); MSA 7.7(4p), of Const 1963, art 9, § 4, and of the official record of the 1961 Constitutional Convention, the Tax Tribunal concluded that the state's policy was to advance and encourage religious institutions whenever possible and determined that the statutory exemption applied during the periods of the

preparation to construct and the construction of a church.

Two weeks later the church presented architectural plans and other documentary evidence setting forth the plans for the construction of a house of public worship on the property. On June 5, 1986, the Tax Tribunal entered an order granting an exemption to the church on the basis that the church was proceeding with reasonable diligence towards the construction of a church building.

This Court's review of Tax Tribunal decisions not related to property tax evaluation or allocation is limited to determining whether the decisions are authorized by law and whether the factual findings are supported by competent, material, and substantial evidence on the whole record. *Detroit Bank & Trust Co v Dep't of Treasury,* 145 Mich App 327, 335; 377 NW2d 425 (1985); Const 1963, art 6, § 28.

In general,, tax exemption statutes are strictly construed in favor of the taxing authority. *Michigan United Conservation Clubs v Lansing Twp,* 423 Mich 661, 664; 378 NW2d 737 (1985). As our Supreme Court stated in *Ladies Literary Club v Grand Rapids,* 409 Mich 748, 753; 298 NW2d 422 (1980):

> This Court has long held that since "[e]xemption from taxation effects the unequal removal of the burden generally placed on all landowners to share in the support of local government [and] [s]ince exemption is the antithesis of tax equality, exemption statutes are to be strictly construed in favor of the taxing unit".

We are cognizant, however, that a strict construction does not mean a strained construction adverse to the legislative intent. *Ann Arbor v The Univer-*

*sity Cellar, Inc,* 401 Mich 279, 288-289; 258 NW2d 1 (1977).

The exemption under which the Tax Tribunal determined that the church was exempt is that contained in MCL 211.7(s); MSA 7.7(4p), which provides:

> Houses of public worship, with the land on which they stand, the furniture therein and all rights in the pews, and any parsonage owned by a religious society of this state and occupied as a parsonage are exempt from taxation under this act. Houses of public worship includes buildings or other facilities owned by a religious society and used predominantly for religious services or for teaching the religious truths and beliefs of the society.

In addition, Const 1963, art 9, § 4 provides a tax exemption for religious and educational nonprofit organizations. Section 4 states:

> Property owned and occupied by nonprofit religious or educational organizations and used exclusively for religious or educational purposes as defined by law, shall be exempt from real and personal property taxes.

The convention comment to the section noted that the exemption provided under § 4 already existed by statute:

> This is a new section providing exemption from property taxes of those properties owned and occupied by non-profit corporations and used exclusively for religious or educational purposes. These exemptions already exist by statute.

It is evident that § 4 merely reinforces rather than changes or modifies the statutory exemption.

This Court held as much in *American Youth Foundation v Benona Twp,* 8 Mich App 521; 154 NW2d 554 (1967). There, this Court construed § 4 in view of the official record of the 1961 Constitutional Convention and concluded that the framers of the Constitution intended to adopt and retain existing statutory limitations on exemptions as set forth in MCL 211.7; MSA 7.7.

Although the instant case presents an issue of first impression, we are guided by previous cases in which exemptions have been sought. For example, the statutory exemption pertaining to parsonages ("any parsonage owned by a religious society of this state and occupied as such"), as enacted for a much earlier tax year, was construed by our Supreme Court as requiring occupancy before a legal exemption may be claimed. *St Joseph's Church v Detroit,* 189 Mich 408, 413; 155 NW 588 (1915). In reaching its conclusion, our Supreme Court stated:

> We agree with the claim of appellant [City of Detroit] that the dominant feature of the statute is that such parsonage must first be occupied as a parsonage, before it can be held to be exempt from taxation. In other words, it is an essential requirement of the statute that the parsonage must be occupied as such before it can be legally exempted from taxation.

Significantly, the statute in question in *St Joseph's Church* is a predecessor to the statute in question in the instant case.

Similarly, in *Rural Agricultural School Dist v Blondell,* 251 Mich 525; 232 NW 377 (1930), our Supreme Court construed a statutory exemption for "[l]ands owned by any . . . school district and the buildings thereon, used for public purposes" as

being contingent upon actual use for public purposes. The Court found that a present use, not a future intended use, was a necessary prerequisite to the exemption. Thus, the intent of the taxpayer-school district to use the property at some future time for school purposes was not found to meet the exemption condition. The Court quoted from 2 Cooley on Taxation (4th ed), § 687, for the appropriate rule:

> An intention to use property at some uncertain time in the future, for purposes which will render it exempt from taxation under the law of the State, does not preclude its taxation before actually used for the purpose warranting an exemption. If the use determines the right to exemption, it is the present use and not the intended use in the future which governs.

From our review of the statute and the applicable case law, and keeping in mind the rule that statutes granting tax exemptions are strictly construed in favor of the taxing authority, we conclude that actual use of a building, not merely preparation for construction or even initiation of actual construction, is a prerequisite to an exemption from taxation under MCL 211.7(s); MSA 7.7(4p). By the statute's own terms, a prerequisite to an exemption is that the house of public worship be "*used* predominantly for religious services or for teaching the religious truths and beliefs of the society." (Emphasis supplied.) The holdings in *St Joseph's Church, supra,* and *Rural Agricultural School Dist, supra,* support our interpretation. Finally, such a holding is consistent with the rule that statutes granting tax exemption are to be strictly construed.

We find the church's reference to outside authority to be unconvincing. Other jurisdictions have

reached conflicting results based on the particular language of those states' exemption statutes.

The decision of the Tax Tribunal is reversed. The case is remanded for consideration of the church's alternative claim that the city's assessment was too high.